UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| REDEEMED CHRISTIAN CHURCH OF GOD, | ) | Case No. 09-30878-WIL |
| RIVER OF LIFE, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**FOURTH AMENDED DISCLOSURE STATEMENT**
**FOR SECOND AMENDED PLAN OF REORGANIZATION**
**PROPOSED BY DEBTOR-IN-POSSESSION**

COMES NOW, Redeemed Church of God, River of Life, the Debtor-in-Possession (hereinafter the "Debtor" or "Redeemed Church"), by and through counsel, Cohen Baldinger & Greenfeld, LLC and provides this Fourth Amended Disclosure Statement for all of the known creditors of the bankruptcy estate for the purpose of disclosing such information as is deemed material, important and necessary for all creditors to arrive at a reasonably informed decision in exercising their right, if any, to vote for acceptance or rejection of the Second Amended Plan of Reorganization (the "Plan"). The Plan is presently on file with the Bankruptcy Court, and a copy thereof accompanies this Disclosure Statement.

## ARTICLE I: INTRODUCTION

On October 29, 2009, the Redeemed Church, a corporation organized and existing under the laws of the State of Maryland, filed a voluntary petition pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor owns and operates a church located in Prince George's County and providing religious and educational services to its members and its surrounding community. At all times since the commencement of this Chapter 11 proceeding, the

1

Debtor has remained in possession of its assets and the control of its affairs as Debtor-in-Possession. This Disclosure Statement is required by Chapter 11 of the Bankruptcy Code. Its purpose is to provide creditors and other parties in interest in this case with sufficient information to enable them to make an informed decision as to whether to accept or reject the Plan that has been filed with the Court. The requirements for approval of this Disclosure Statement are set forth in §1125 of the Bankruptcy Code.

If, after reading this Disclosure Statement, you believe that it does not give you sufficient information upon which to base your choice of accepting or rejecting the Plan, you may file an objection to the adequacy of the Disclosure Statement, stating what information you believe to be missing, or what facts or other information are not adequately presented. You are entitled to, and may insist upon, the degree and detail of information that a reasonably prudent investor would have a right to expect before making a decision to invest.

Your objection must be specific and filed with the Clerk of the Bankruptcy Court. A copy must be mailed to the undersigned. The Court may hold a hearing upon your objection, or may rule upon the contents of your objection and any accompanying memorandum, and the contents of any responses to your objection.

As a creditor or interest holder your vote is important. The Plan can be confirmed by the Court if it is accepted by the holders of two-thirds (2/3) in amount and more that one half (½) in number of claims in each impaired class of claims voting on the Plan, and if it is accepted by the holders of two-thirds (2/3) in amount of interests in each impaired class of equity interests voting on the Plan. In the event the requisite acceptances are not obtained, the court may nevertheless confirm the Plan if the court finds that it accords fair and equitable treatment of the class or classes rejecting

2

it and that it provides at least the minimum treatment and distribution required by the Bankruptcy Code.

No representations concerning the Debtor or the Chapter 11 Estate (particularly as to the value of its assets) are authorized by the Debtor except as set forth in this statement. Any representations or inducements made to secure your acceptance or rejection of the Plan which are other than as contained in this statement should not be relied upon by you in arriving at your decision, and such additional representation and inducements should be forwarded to counsel for the Debtor, who, in turn, shall deliver such information to the Bankruptcy Court for such action as may be deemed appropriate.

## ARTICLE II: BACKGROUND INFORMATION

**A.      History of the Debtor**

Redeemed Church began in April 2001 holding its inaugural services at Bladensburg Elementary School. As the congregation began to grown, it moved from this location to Alternative High School in 2005 where it continued to meet until September 2010. During this time, Redeemed Church was faced with constraints associated with holding services in a school which it did not have the exclusive use of. Those constraints included a lack of office space for the Pastor, limited seating capacity of the school auditorium, inability to hold revival meetings due to stringent usage regulations, limited available classrooms for children's church. Additionally, Redeemed Church faced the time and cost constraints of having to frequently move its equipment which often resulted in damage and the required replacement of that equipment.

In 2003, Redeemed Church purchased approximately four (4) acres of land in Riverdale, Maryland. In 2007, it started construction of its new sanctuary after obtaining a loan of $3.5 million

from Foundation Capital.  From the loan proceeds, the Debtor used five hundred thousand ($500,000.00) to pay-off the balance which remained due from the purchase of the land.  During construction of the building, and through no fault of Redeemed Church, it was informed that the originally approved site plan for storm water management and underground filtration had to be modified.  Those modifications cost increased the cost of the project by three hundred fifty thousand dollars ($350,000.00).  Additionally, the original duct bank design approved by county was not accepted by PEPCO and had to be redesigned. Modifications were also required for the steel and electrical. These change orders dramatically increased the construction cost.

During this time, Redeemed Church was paying the debt service due on the construction loan and was also paying rent for school space, storage of church equipment, and transportation of church equipment from storage to church location.  As a result of the unanticipated increase in the construction costs and delay, Redeemed Church began to suffer a significant cash flow crunch and construction was stalled.  The church membership declined during this period due to the inconvenience of need to continue holding church services in the school and the uncertainty of completing the church sanctuary.  The decline in the church membership further amplified the cash flow constraints of the church and made it difficult for the church to meet its financial obligations on the construction loan due to Foundation Capital.  Redeemed Church ultimately defaulted on its obligations to Foundation Capital, which eventually scheduled a foreclosure sale for the church property.  In order to stay the foreclosure of its property and provide it with the time necessary to reorganize its affairs, Redeemed Church file a Voluntary Petition for Relief pursuant to Chapter 11 of the United States Bankruptcy Code on October 29, 2009.

4

B.      **Post-Petition Operations**

At all times since the filing of the petition herein, the Debtor has remained in control of its affairs and in possession of its assets as Debtor-in-Possession.  The Debtor has continued its efforts to complete the construction of its building and to increase its membership.  The Debtor has maintained constant communication with officials from Prince George's County and as a result of its efforts, the County granted the church temporary use and occupancy permit, premised on the Debtor's ability to continue to meet prescribed benchmarks.  The Debtor has been able to raise money from its membership and has been successful in meeting those benchmarks and having the County extend its temporary use and occupancy permits.  Despite the depressed state of the local economy, the Debtor has been able, through aggressive in-house fund-raising drives to complete the last floor of the building and hopes to begin work on the extended parking lot in the near future.

Services in the new sanctuary began in September 2010 and the Debtor has been continuing its efforts to resuscitate the church membership both numerically and financially through advertisement and publicity community outreach programs.  The Debtor has made its multipurpose hall available for rent to the community which has also supplemented its revenue.  The Debtor is also continuing its efforts to obtain final licensing approval for its aftercare program which it believes will generate income for the church.

In January 2010, faced with the pressing need to complete construction on the church property, the Debtor sought and obtained the authority to reaffirm its prepetition obligations to Iacoboni Site Specialists, Inc. ("Iacoboni").  Iacoboni had been contracted by the Debtor to complete the stoning, paving and site work on the church premises.  At the time of the filing of the petition herein, the Debtor was indebted to Iacoboni for the sum of four hundred fifty-nine thousand five

hundred twenty-two dollars and seventy-one cents ($459,522.71) and the estimated cost to complete the work was slightly more than one hundred eighty-five thousand dollars ($185,000.00). The Debtor agreed to pay Iacoboni the sum of eighteen thousand fifty-five dollars and eighty-six cents per month until it was paid in full and Iacoboni agreed to complete the necessary work on the property. The Debtor commenced payments as required but has since defaulted on those payments. Iacoboni has not completed the work required by the contract.

In May 2010, JPMorgan Chase Bank, NA ("JPMorgan") filed a motion seeking relief from the automatic stay to allow it to repossess a 2008 Land Rover Range Rover Sport vehicle. That vehicle had been purchased by the Debtor and Abimbola Adekunle. In response to that motion, the Debtor and JPMorgan entered into a consent order which provided for adequate protection payments to JPMorgan. Those adequate protection payments have been paid and the automatic stay remains in effect as of the filing of this Amended Disclosure Statement.

In October, 2010, Foundation Capital Resources, Inc. ("Foundation Capital"), the holder of the first position deed of trust against the Debtor's real property, filed a motion for relief from the automatic stay so that it could commence foreclosure proceedings against the Debtor's real property. The Debtor opposed that motion, and through negotiation with Foundation Capital, it was able to agree to provide adequate protection payments to Foundation Capital pending the confirmation of a Plan in this case in return for a continuation of the automatic stay.

In June 2011, The United States Trustee filed a motion seeking the conversion of this case to one under Chapter 7 of the Bankruptcy Code, or in the alternative, the dismissal of this case. That motion was premised on the assumption by the United States Trustee that the prolonged term of the Debtor in this Chapter 11 proceeding was indicative of an inability to reorganize. The Debtor has

6

opposed this motion and the parties resolved that motion by agreeing that the Debtor would file a Plan and Disclosure Statement by a date certain and would continue to timely file monthly operating reports and pay its quarterly fees due to the U.S. Trustee.  The Debtor complied with those provisions.  The plan was predicated upon the Debtor's belief that it would receive approval from Prince George's County to open a day-care center and school on the church premises.  Rather, the county required the Debtor to complete additional work on the premises, including the completion of an additional parking lot before those licenses would be granted.  As a result, at the time of the hearing on confirmation of its plan, the Debtor had not received approval to open either the daycare center or its school, and it did not believe that it could demonstrate the feasibility of its plan without such approval. The Debtor and the United States Trustee thereupon agreed to ask the Court to deny confirmation of that plan, but allow the Debtor additional time to obtain its required licensing and to then propose a new plan to creditors and the Court.

Since that time, the Debtor has obtained the necessary licenses and has commenced the operations of its child care and school facility, as Tender Touch Learning Center.  The Debtor has several children enrolled for the 2013 summer and is actively marketing to potential enrollees for the fall term which will begin in September.  The Debtor further believes that the existence of the school and child care facilities will ultimately increase membership in its congregation and thus the other revenue which the Church will generate.  This increase in general, non-school revenue, is not however included in the projections of future income and expenses.

C.      **Assets of the Estate**

The Debtor's principal asset is its real property which consists of the church building and accompanying improvements.  At the time of the filing of this case, that property was incomplete

7

but since the filing of this case the Debtor has made substantial improvements to the property and has received a use and occupancy permit from Prince George's County. Although, that permit has been issued, the building is not entirely complete. Most notably, the Debtor needs to complete the parking lot which is adjacent to the church building. The estimated cost of completing that parking lot is two hundred fifty thousand dollars ($250,000.00). The property was recently appraised as having a value of four million five hundred fifty thousand dollars ($4,550,000.00). While the Debtor has made considerable progress in completing the construction on the property since the appraisal was completed, there remains additional work at a cost of approximately two hundred fifty thousand dollars ($250,000.00) thus leaving the net value of the property at four million three hundred thousand dollars ($4,300,000.00).

The Debtor also owns two vehicles: a 2000 Ford F350 which is owned free and clear of liens and has a value of approximately three thousand dollars ($3,000.00); and a 2008 Land Rover which is over-encumbered by a purchase-money lien held by Chase Auto Finance. The Debtor also owns office equipment, church robes, and audio/visual equipment having an aggregate value of no more than four thousand dollars ($4,000.00).

D.   **Claims Against the Estate**

Administrative requests for professional fees:

| | | |
|---|---|---|
| Cohen Baldinger & Greenfeld, LLC<br>Counsel for the Debtor | $ | 10,000 [(est.)] |

Priority Claims

| | | |
|---|---|---|
| Internal Revenue Service<br>(941 payroll taxes) | $ | 9,331 |

Secured Claims

| | |
|---|---|
| Foundation Capital Resources, Inc. (Real property) | $ 3,925,832 |
| Chase Auto Finance (2008 Land Rover) | $     31,426 |
| Prince George's County, Maryland (2009 Personal Property Tax) | $      4,072 |
| Key Equipment Finance, Inc. (equipment lease ) | $   133,144 |
| Pawnee Leasing Corporation (digital signage system) | $   21, 664 |
| Trinity, a division of Bank of the West (Pulpit, communion table, etc.) | $   68,845 |
| Iacoboni Site Specialists, Inc. (Real Property) | $   429,446[1] |

General Unsecured Claims

| | |
|---|---|
| General Unsecured Claims | $ 295,000 (est.) |

## ARTICLE IV: THE PLAN OF REORGANIZATION

**A.     Summary of the Plan**

THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN.  THIS SUMMARY
SHOULD NOT BE RELIED ON FOR VOTING PURPOSES.  CREDITORS ARE URGED TO
READ THE ENTIRE PLAN AND CONSULT WITH COUNSEL OR EACH OTHER IN ORDER
TO UNDERSTAND THE PLAN FULLY.  A COPY OF THE PLAN HAS BEEN FILED WITH

---

[1]  The United States Trustee has disputed whether the claims of Iacoboni are fully secured by the value of the Debtor's real property.  The Debtor believes that the value of the Property is extremely close to the payoff balances due on the claims against the Property.  As such, it does not believe that prolonged litigation over this issue, and the associated costs thereof, are justified and will only serve to hamper the reorganization efforts.

THE CLERK, UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MARYLAND, 6500 CHERRYWOOD LANE, THIRD FLOOR, GREENBELT, MARYLAND 20770 AND IS AVAILABLE FOR INSPECTION AND REVIEW.

THE PLAN IS COMPLEX AND REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BY THE DEBTOR. AN INFORMED JUDGMENT CONCERNING THE PLAN, THEREFORE, CANNOT BE MADE WITHOUT UNDERSTANDING IT.

The Plan provides for the creation of ten (10) classes of claims to be paid in the following manner:

### B.    Classification and Treatment of Claims and Interests

### Class I - Administrative Expenses

The administrative expenses of the Debtors' Chapter 11 cases as allowed pursuant to §503(b) of the Bankruptcy Code shall be paid in full, upon the Effective Date of the Plan or allowance of such claim, whichever is later.  This Class shall include the claims resulting from the operations of the Debtor's business incurred since the Petition Date, and all claims of professionals incurred since the Petition Date, and any quarterly fees due to the Office of the United States Trustee. This Class is unimpaired.

### Class II - Priority Tax Claims

This Class consists of all tax claims entitled to priority pursuant to 11 U.S.C. §507 of the Bankruptcy Code. Upon information and belief, the only claims in this class are the claims of the Internal Revenue Service for payroll taxes and tax withholdings for 2006-2009 in the sums of nine thousand three hundred thirty-one dollars and seventeen cents ($9,331.17). This Class shall receive payment in full, plus post-confirmation interest at the rate of three and one-half percent (3.5%) per

10

annum.  Payments to this Class shall be made in monthly installments over a four (4) year period commencing on the Effective Date and continuing monthly thereafter until the claims have been paid in full.  This amortization will require payments of two hundred eight dollars and sixty-one cents ($208.61) to this class each month.  This amortization exceeds the maximum tern provided by the Bankruptcy Code and thus this treatment requires the express consent of the members of this Class. This Class is unimpaired.

**Class III - <u>Secured Tax Claim of Prince George's County, Maryland</u>**

This Class consists of the real property tax claim of Prince George's County which would be entitled to priority pursuant to 11 U.S.C. §507 of the Bankruptcy Code but for the fact that it is secured against the real property of the Debtor by statute.  Upon information and belief, there are two (2) claims in this class is in the sum of four thousand sixty-three dollars and ninety-five cents ($4,063.95) and four thousand seventy-two dollars and sixty-six cents ($4,072.66).  As a non-profit religious entity, the Debtor believes that it is exempt from these taxes and it intends to object to the allowance of the claims of this Class.  Prince George's County has determined that no real property taxes have been assessed for calendar year 2011 based on the Debtor's exemption as a religious entity.  To the extent that there are Allowed Claims of this Class, such claims shall be paid in full, plus interest at the rate of three and one-half percent (3.5%) per annum.  Said claims shall receive monthly payments of one hundred seventy-five dollars and ninety-five cents ($175.95) for twenty-four (24) consecutive months commencing on the Effective Date.  This Class shall retain any liens which it may have against the Debtor's real property until the Allowed Claims of this Class are paid in full.   This Class is impaired.

11

**Class IV - <u>Secured Claim of Foundation Capital Resources, Inc.</u>**

This Class is comprised of the claim of the Foundation Capital Resources, Inc. ("Foundation Capital") as the holder of a first mortgage lien against the Debtor's real property. During the pendency of this case, this Debtor was directed to make adequate protection payments to this class and the Debtor has complied with that Order. The Debtor believes that the claims of this Class are in excess of three million nine hundred thousand dollars ($3,900,000). This Class shall receive payment in full on account of its Allowed Claims over a forty (40) year period. This Allowed Claims of this Class shall accrue interest at the rate of four percent (4%) per year. This Class has continued to receive adequate protection payments of seven thousand dollars ($7,000.00) per month and those payments will continue through September 2013, after which time, payments to this Class for the next two (2) years shall be interest only payments of thirteen thousand dollars ($13,000.00) per month. After the expiration of that two (2) years of the repayment period to this Class, the payments to this Class shall increase to an amount sufficient to amortize the entire remaining Allowed Claim of this Class of the balance of the repayment period. The Debtor believes that this amortization will result in payments to this Class of sixteen thousand six hundred fifty-one dollars ($16,651) per month. Payments to this Class shall continue monthly until the Allowed Claims of this Class are paid in full. This Class shall retain its lien against the Debtor's real property until the claims of this Class are paid in full. This Class is impaired.

**Class V - <u>Secured Claim of the Chase Auto Finance</u>**

This Class is comprised of the claim of the Chase Auto Finance ("Chase") which is secured by a lien against a 2008 Land Rover automobile. At the time of the commencement of this case, the claims of this Class totaled thirty-one thousand four hundred twenty-six dollars ($31,426) and this

class has continued to receive its regularly scheduled payment during the pendency of this case. This vehicle is used by Abimbola Adekunle in conjunction with his work on behalf of the Debtor. Payments for this vehicle have been made recently by Abimbola Adekunle and he shall continue to make the payments due to this Class under this Plan. This Class shall continue to receive its regularly scheduled payment in the sum of eight hundred twelve dollars and ten cents ($812.10) until the claims of this Class are paid in full, which is scheduled to take place in May 2013. This Class shall retain its lien against the vehicle until its claims are paid in full. This Class is unimpaired.

**Class VI - <u>Secured Claim of Equipment Finance, Inc.</u>**

This Class is comprised of the claim of the Equipment Finance, Inc. ("EFI") which is secured by a lien against furniture and equipment of the Debtor pursuant to a capital lease. At the time of the commencement of this case, the claims of this Class totaled one hundred thirty-three thousand one hundred forty-three dollars ($133,143). This Class has received payment in full during the course and shall receive no further payment pursuant to the terms of this Plan. This Class is impaired.

**Class VII - <u>Secured Claim of Pawnee Leasing Corporation</u>**

This Class is comprised of the claim of the Pawnee Leasing Corporation ("Pawnee") which is secured by a lien against digital signage system pursuant to a capital lease. At the time of the commencement of this case, the claims of this Class totaled twenty-one thousand six hundred sixty-three dollars and thirty-seven cents ($21,663.37) and this Class has continued to receive its regularly scheduled payment during the pendency of this case. This Class shall continue to receive its regularly scheduled payment in the sum of five hundred thirty-four dollars and eighty-six cents ($534.86) until the claims of this Class are paid in full. This Class shall retain its lien against the digital signage system until its claims are paid in full. This Class is unimpaired..

**Class VIII - <u>Secured Claim of Trinity, a division of Bank of the West</u>**

This Class is comprised of the claim of the Trinity, a division of Bank of the West ("Trinity") which is secured by a lien against the pulpit, the communion table, the pastor's chairs and related religious furniture pursuant to a capital lease.  At the time of the commencement of this case, the claims of this Class totaled sixty-eight thousand eight  hundred forty-five dollars and ten cents ($68,845.10).  This Class shall receive payment in full on account of its claims, plus interest at the rate of three and one-half percent (3.5%) over a period of six  (6) years commencing on the Effective Date.  Payments shall be made monthly in the sum of one thousand sixty-one and forty-eight cents ($1,061.48) and shall continue monthly from the Effective Date until the claims of this Class are paid in full.   This Class shall retain its lien against the pulpit and its other collateral until its claims are paid in full.  This Class is unimpaired.

**Class IX - <u>Secured Claim of Iacoboni Site Specialists, Inc.</u>**

This Class is comprised of the claim of the Iacoboni Site Specialists, which is secured by a deed of trust against the Debtor's real property.  Pursuant to a promissory note, deed of trust, judgement entered by the Circuit Court for Prince George's County Maryland against the individual guarantors of this obligation, and providing for both post-petition services and payments made, the Debtor believes that the balance due to this Class is approximately four hundred twenty-nine thousand four hundred forty-six dollars and twenty-nine cents ($429,446.29).  This Class shall receive payment in full on account of its claims, plus interest at the rate of five and one-half percent (5.5%) per annum.  Payment to this Class shall be made in escalating monthly installments commencing on the Effective Date and continuing monthly thereafter until the claims of this Class have been paid in full.  These monthly installment payments shall commence at the rate of two thousand dollars ($2,000.00) per

14

month for the first twenty-four (24) months, escalating to three thousand dollars ($3,000.00) for the second twenty-four (24) months, and then escalating to four thousand five hundred dollars ($4,500.00) per month and continuing at that rate thereafter until the claims have been paid in full.

This Class shall retain its lien against the Debtor's real property and shall retain any and all rights against the guarantors of its claims, until its claims are paid in full. This Class is impaired..

## Class X - <u>General Unsecured Claims</u>

This Class is comprised of all general unsecured claims not entitled to priority. The claims in this class total approximately two hundred ninety-five thousand dollars ($295,000.00). This class shall share, pro-rata, in a total distribution of twenty-five thousand dollars ($25,000.00). The distribution to this Class shall be made in five (5) installments of five thousand dollars ($5,000.00) each. The installments shall begin on the one year anniversary of the Effective Date and shall continue semi-annually thereafter until the Debtor has funded the total of twenty-five thousand dollars ($25,000.00). This Class is impaired.

## Class X - <u>Claims of Equity Holders</u>

As a non-profit religious organization, there are no equity interests in the Debtor and the Debtor's plan does not contemplate a change in the Debtor's tax status.

### C. Cash Receipts

The funds necessary for the satisfaction of creditors' claims will be derived from the funds currently held by the Debtor, and funds derived from the continuing operation of the Debtor's business. Based on the Debtor's cash flow projections, the Debtor believes that such cash flow will be sufficient to meet the obligations provided by the Plan and the ongoing costs of conducting the Debtor's business operations. A monthly cash flow projection for the calendar year 2012 is attached

hereto and made a part hereof as Exhibit "A".

## ARTICLE V: EXECUTORY CONTRACTS

The Debtor is unaware of any executory contracts or unexpired leases, other than those specifically referenced in the Debtor's Plan.  In the event that the Debtor is made aware of any executory contracts or unexpired leases prior to the confirmation, the Debtor reserves the right to apply to the Court prior to the Confirmation Date to assume or reject any executory contracts or unexpired leases pursuant to Section 365 of the Bankruptcy Code.

All executory contracts and unexpired leases of the Debtor which are not assumed prior to the Confirmation Date, or which the Debtor has not applied to the Court for permission to assume prior to Confirmation Date, shall be deemed rejected.  Any creditor asserting a claim for monetary damages as result of the rejection of an executory contract or unexpired lease shall file a Proof of Claim, and serve it upon the Debtor within ten (10) days following the Confirmation Date.

## ARTICLE VI: LIQUIDATION ANALYSIS

This Plan is an operating Plan.  It provides for continuing operation of the Debtor's business to fund an orderly repayment of claims of creditors within the constraints of the cash flow generated by the Debtor's business.

The Debtor's principal asset is its real property and the improvements thereon.  During the pendency of this case, that property has been appraised as having a value of four million five hundred fifty thousand dollars ($4,550,000).  A copy of that appraisal is attached hereto and made a part hereof as Exhibit "B".  It is encumbered by liens held by Foundation Capital Resources, Inc. and Iacoboni Site Specialists, Inc. for the sums of approximately three million nine hundred thousand dollars ($3,900,000) and approximately four hundred thirty thousand dollars ($430,000.00) respectively.

After consideration of the costs which would be incurred in conjunction with a sale of the property, the Debtor does not believe that there is any realizable equity in the property.

In addition to its real property, the Debtor owns a very small amount of personal property consisting of furniture, equipment, and other odds and ends. This personal property is believed to have an aggregate value of less than five thousand dollars ($5,000.00). The Debtor also maintains balances in its bank accounts which generally average approximately twenty thousand dollars ($20,000.00).

The Debtor's proposed Plan provides for the payment of the secured claims in full, along with the administrative expense claim held by counsel for the Debtor. It also requires the payment in full to priority tax claims and provides a distribution of twenty-five thousand dollars ($25,000.00) to general unsecured claimants on account of their allowed claims. As outlined in the liquidation analysis which is attached hereto and made a part hereof as Exhibit "C", the proposed Plan provides to creditors far in excess of the amount they could reasonably expect to receive if this case were converted to one under Chapter 7 of the Bankruptcy Code.

## ARTICLE VII: FEASIBILITY OF THE PLAN

This Plan is to be funded from the funds currently held by the Debtor, and funds to be generated from the continuing operations of the Debtor's business. With the funds currently held by the Debtor, and the revenues which are projected to be generated by the continuation of its business, the Debtor believes that it is adequately capitalized to continue its business operations and fund the repayment of its obligations as required by the terms of the Plan. The Debtor does not believe that there are any impediments to effectuation of the Plan.

## ARTICLE VIII: PENDING LITIGATION

There is no pending litigation involving the Debtor at this time nor is any litigation being contemplated by the Debtor.

## ARTICLE IX: VOTING ON THE PLAN AND CONFIRMATION

Voting on acceptance or rejection of the Plan is governed by the provision of the Bankruptcy Code. Each voting creditor will be supplied with an official ballot, in a form prescribed by the Bankruptcy Court. Creditors may vote to accept or reject the Plan by filing a completed ballot with the undersigned counsel for the Debtor. A class of creditors will be considered to have accepted the Plan (1) if it is accepted by creditors holding at least two-thirds (2/3) in amount and more than one-half (½) in number of the allowed claims of each class that has voted, or (2) if the class is unimpaired within the meaning of the Bankruptcy Code.

After the time for voting on the Plan passes, the Bankruptcy Court will hold a hearing and rule on confirmation of the Plan in accordance with the Bankruptcy Code. If all requirements for confirmation of the Plan under the Bankruptcy Code are satisfied, except that the Plan is not accepted by creditors, the Bankruptcy Court may confirm the Plan without the acceptance of creditors if the Court finds that the Plan does not discriminate unfairly, and is fair and equitable (within the meaning of the Bankruptcy Code) with respect to any class of creditors that does not accept the plan.

## ARTICLE X: TAX CONSEQUENCES

Because the tax consequences to each creditor can vary depending upon such creditor's particular circumstances, all creditors and other persons affected by the plan should consult their own tax advisor for a complete analysis of the tax consequences resulting from the confirmation of this plan. As an approved not for profit religious organization, the Debtor is exempt from the payment

18

of income taxes.

## ARTICLE XI: EFFECT OF PLAN CONFIRMATION

The provisions of a confirmed Plan are binding on all parties to the Plan, including the Debtor, its creditors, and all parties in interest. In the event that the Court denies confirmation of the Plan, the Debtor may amend the Plan or the case may be converted to Chapter 7 or be dismissed.

The terms of a confirmed Plan herein shall be enforceable against the Debtor, its creditors and all parties in interest herein. Should the Debtor default on any provision of the confirmed Plan, creditors and parties in interest shall be free to pursue their available state law remedies to enforce the terms of a confirmed Plan.

## ARTICLE XII: RETENTION OF JURISDICTION

This Court shall retain jurisdiction, after confirmation of this Plan of Reorganization, as to the provisions of this Plan and overall disputes and litigation which may be pending at the time of confirmation of this Plan, and any controversies which may arise hereafter which would affect the Debtor's ability to carry out this Plan, until all such disputes and litigation shall be concluded and the Plan shall be fully consummated.  Further, this Court shall retain jurisdiction for the purpose of liquidating and determining any and all claims or disputes relating thereto, until all litigation to which the Debtor is a party is terminated.

## ARTICLE XIII: SPECIAL RISK FACTORS

The Debtor's Plan currently proposes to pay the priority tax claims of the Internal Revenue Service over a period of four (4) years from the Effective Date of the Plan.  The Bankruptcy Code requires that the Plan satisfy priority tax claims within five (5) years of the commencement of the bankruptcy case.  As this case was commenced in October 2009, the proposed Plan is in violation violation of this requirement.  Absent the consent of the Internal Revenue Service, the provisions for the payment of the Class II claims would have to be accelerated to provide for payment in full of that Class by early October 2014 in order for the Plan to be confirmable.

Other than the proposed treatment of Class II claims, the Debtor does not believe that there are any special risk factors associated with either the confirmation of the Debtor's Plan or the effectuation of that Plan once it is confirmed.

## ARTICLE XIII: CONCLUSION

This Disclosure Statement is only a summary of the Plan and creditors are urged to read the Plan for full details of the treatment of claims.

The Debtor believes that the proposed Plan is feasible, and in the best interests of the creditors.  The Debtor, therefore, recommends acceptance of the Plan by creditors.

Dated: July 8, 2013                                  REDEEMED CHRISTIAN CHURCH OF
                                                     GOD, RIVER OF LIFE,


by and through counsel

COHEN BALDINGER & GREENFELD, LLC


By: */s/ Steven H. Greenfeld*
    Steven H. Greenfeld
    7910 Woodmont Avenue
    Suite 1103
    Bethesda, MD  20814
    (301) 881-8300
    Counsel for Debtor-in-Possession

21

# *EXHIBIT "A"*

(CASH FLOW PROJECTIONS)

# EXHIBIT "B"

(APPRAISAL)

# *EXHIBIT "C"*

### (LIQUIDATION ANALYSIS)